```
1           IN THE DISTRICT COURT OF THE UNITED STATES
                FOR THE NORTHERN DISTRICT OF OHIO
2                      EASTERN DIVISION


3
        JOHN JORDAN,
4
                                    09CV707
5              Plaintiff,

6           vs.                     Monday, November 1, 2010
                                    9:00 a.m.
7
        JOHN SOLIDAY FINANCIAL
8       GROUP, LLC, ET AL.,
                                    Volume  1
9              Defendants.

10


11              TRANSCRIPT OF TRIAL PROCEEDINGS
            BEFORE THE HONORABLE KENNETH S. McHARGH
12              UNITED STATES MAGISTRATE JUDGE


13


14      APPEARANCES:

15      For the Plaintiff:      Gregory S. Reichenbach, Esq.
                                P. O. Box 256
16                              Bluffton, Ohio   45817
                                419-529-8300
17
        For the Defendants:     Boyd W. Gentry, Esq.
18                              Surdyk, Dowd & Turner Co., L.P.A.
                                One Prestige Place, Suite 700
19                              Miamisburg, Ohio   45342
                                937-222-2333
20
        Official Court Reporter:  Susan K. Trischan, RMR, CRR, FCRR
21                              7-189 U.S. Court House
                                801 West Superior Avenue
22                              Cleveland, Ohio  44113
                                216/357-7087
23
        Proceedings recorded by mechanical stenography; transcript
24      produced by computer-aided transcription.

25
```

| | |
|---|---|
| 1 | MONDAY, NOVEMBER 1, 2010, 9:00 A.M. |
| 2 | THE COURT:  Good morning.  Be seated. |
| 3 | Good morning, counsel.  We're here obviously |
| 4 | to go forward with the trial of this matter. |
| 09:01:47 5 | Mr. Reichenbach. |
| 6 | MR. REICHENBACH:  Reichenbach. |
| 7 | THE COURT:  Reichenbach, I'm sorry.  Good |
| 8 | morning.  And that's your client, excuse me, Mr. Jordan. |
| 9 | Good morning. |
| 09:02:02 10 | MR. JORDAN:  Good morning. |
| 11 | THE COURT:  Are you ready to proceed, sir? |
| 12 | MR. REICHENBACH:  Yes, Your Honor. |
| 13 | THE COURT:  And, well, I'll leave it to the |
| 14 | parties. |
| 09:02:10 15 | Good morning, Mr. Gentry. |
| 16 | MR. GENTRY:  Good morning, Your Honor. |
| 17 | THE COURT:  And your representative, |
| 18 | Mr. Cheek. |
| 19 | MR. GENTRY:  Yes.  Emerson Cheek. |
| 09:02:23 20 | THE COURT:  It was indicated there were |
| 21 | stipulations -- you may be seated -- that the parties had |
| 22 | entered into. |
| 23 | What's your expectation as to how you're going |
| 24 | to proceed with respect to the stipulations? |
| 09:02:40 25 | MR. REICHENBACH:  Well, as Your Honor |

1    mentioned, we did file stipulations.  There are eight joint

2    exhibits attached to that.  I also have a copy for the

3    Court.

4               THE COURT:  All right.  We will proceed.

09:02:54  5               You may call your first witness.

6               MR. REICHENBACH:  Before we do that, Your

7    Honor, I would like to move to separate the witness.

8    There's apparently just one witness that's not a party.

9               THE COURT:  Are you talking Mr. Cheek?

09:03:12 10               MR. REICHENBACH:  No.  There's Mr. Bowman.

11               THE COURT:  Mr. Bowman, I understand you're

12    going to be a witness in this matter, is that correct?

13               MR. BOWMAN:  Yes.

14               MR. GENTRY:  Yes, Your Honor.  We intend to

09:03:24 15    call Mr. Bowman.

16               THE COURT:  All right.  Based on the request

17    of counsel, I'll need to ask that you -- you can sit in the

18    hall there or there's a witness room outside, but you'll

19    have to be outside of the courtroom until you're called to

09:03:39 20    give your testimony.

21               MR. BOWMAN:  Okay.  All right.

22               MR. REICHENBACH:  Would the Court prefer that

23    I use the podium or --

24               THE COURT:  Yes.  I find that the chances of

09:03:50 25    counsel speaking into the mic are much higher if you're at

1   the podium, which would be helpful to the court reporter.

2              MR. REICHENBACH:  Thank you, Judge.

3              May I approach with a copy of the exhibits, or

4   does --

09:04:05  5              THE COURT:  You may.

6              MR. REICHENBACH:  And does the Court have a

7   copy of the stipulations, also?

8              THE COURT:  Yes.  Thank you.

9              One moment, counsel.

09:04:35 10              (Pause).

11              THE COURT:  I apologize, counsel.  I have two

12   copies of your proposed findings, but I'll get your

13   stipulations in a moment.

14              All right.  You may proceed.

09:05:36 15              MR. REICHENBACH:  Thank you, Judge.

16              My name is Greg Reichenbach, I represent

17   Mr. Jordan.  I've been a consumer litigator for six years.

18              Mr. Jordan bought a car about six years ago,

19   and he was sued to collect on that car -- the car's account,

09:05:56 20   I should say -- by a company he never heard of, John Soliday

21   Financial Group.

22              He has a tenth grade education, and the

23   lawsuit against him was filed in Mansfield Municipal Court

24   by a company that we believe the evidence will show did not

09:06:11 25   own the account.

1          Making matters worse, the complaint had

2     attached to it a credit application which disclosed

3     Mr. Jordan's unredacted Social Security Number, date of

4     birth, address, employment information, phone number and

09:06:24  5     signature.

6          That was not even on the contract, which was

7     also attached.  It was on just a credit application.

8          That information was attached intentionally.

9     We're not alleging that they intended to cause him harm by

09:06:39 10     doing it, but it was not an accident that it was attached.

11          It was filed with the Clerk of Court's without

12     redaction, and with no request that it be filed under seal.

13     Mr. Jordan does not know and probably will never know

14     whether or not someone has obtained this personal

09:06:54 15     information about him, and not knowing worries Mr. Jordan.

16          So this Court has the opportunity to set

17     things right by declaring the acts of the defendants to be

18     unfair, deceptive, and awarding actual and statutory

19     damages.

09:07:09 20          I'd like to list the companies involved

21     because it's important to make some distinctions.

22          There's Pro Car Auto Group, Inc. that

23     Mr. Jordan signed the contract with.  That contract was

24     simultaneously assigned to Atlantic Financial Services, Inc.

09:07:27 25          There is also an Atlantic Financial Services,

1    LLC.  There's an Ameristar Financial Company, LLC, and

2    there's an Ameristar Financial Servicing Company, LLC.  And

3    then there's one of the defendants, John Soliday Financial

4    Group, LLC.

09:07:45  5         The evidence will show that there was no

6    assignment of Mr. Jordan's Pro Car account to John Soliday,

7    and that the Cheek law offices, Soliday's lawyer, had

8    already seen the bills of sale which are the same as the

9    assignments before filing the collection lawsuit.

09:08:04 10         The defendants, we believe, intend to offer

11   oral testimony to attempt to change the parties to the

12   assignments.  They would like the assignments to say

13   something they do not say.  Aside from issues of

14   admissibility which the Court will obviously address, the

09:08:26 15   defendants are going to attempt to downplay the significance

16   of what they call a bill of sale which is actually titled

17   bill of sale and assignment.

18         The evidence will show that this Social

19   Security Number, date of birth, and other sensitive

09:08:43 20   information being placed in a Court of record, a Clerk of

21   Court's open to anyone was without good reason and this

22   caused Mr. Jordan some kind of harm.  We don't allege that

23   it's tens of thousands of dollars' worth of harm, but some

24   kind of harm because of the stress and worry about whether

09:09:10 25   or not someone might have accessed that information.

1          I guess that's my opening statement.  If the

2     Court wants to allow Mr. Gentry an opening statement before

3     my evidence, certainly it's up to --

4                    THE COURT:  Mr. Gentry, would you like to give

09:09:26  5     an opening?

6                    MR. GENTRY:  A brief one, thank you, Your

7     Honor.

8                    THE COURT:  You may.

9                    MR. GENTRY:  Good morning, Your Honor.  Boyd

09:09:40 10     Gentry for the defendants.

11               We have two simple issues in front of the

12     Court.

13               One is does a typographical error on an

14     attachment to a contract break the sale and nullify the

09:09:55 15     contract?

16               The second issue is does the inadvertent

17     disclosure of a personal identifier such as a Social

18     Security Number, date of birth, in a State Court pleading

19     attachment violate the Fair Debt Collection Practices Act or

09:10:14 20     the Ohio Consumer Sale Practices Act?

21               Now, the first issue on the contract,

22     Mr. Jordan has the burden of proof here today to prove that

23     something did not occur.  He has to prove that the contract

24     rights, rights to enforce the contract he signed were not

09:10:34 25     transferred to John Soliday Financial Group.

1    Mr. Jordan, I believe, will not call a witness

2    to testify as to the documents.  Mr. Jordan's burden will

3    not be satisfied after his presentation of the evidence, we

4    believe, because he does not have any firsthand knowledge of

09:10:54 5    the documents or the intent of the drafters of the

6    documents.

7    What we have is an 11-page purchase agreement,

8    and attached to that purchase agreement was a one-page bill

9    of sale as an exhibit.

09:11:07 10    The purchase agreement, the 11-page purchase

11    agreement, is the document that actually transferred the

12    rights.  That was the deal.  The rights to enforce the

13    balance on Mr. Jordan's auto loan were sold in that 11-page

14    contract.  There are no typographical errors in that 11-page

09:11:25 15    contract, and Mr. Bowman can testify to that.

16    The exhibit had two typographical errors in

17    it.  You will -- the Court will see on the evidence of

18    Mr. Bowman's testimony that the purchase agreement is the

19    document that was intended to control by the parties, and it

09:11:45 20    is the document that actually transferred the rights to the

21    contract; not the bill of sale.

22    The delivery of goods at the time of the sale

23    under Ohio law is sufficient proof of the transaction, and a

24    bill of sale is not even required.  This transaction could

09:12:08 25    have taken place without a bill of sale, but the parties

1    used a bill of sale so that the parties can show a receipt,

2    if you will, for the transaction without producing an

3    11-page contract every time they want to show some evidence

4    of the contract.

09:12:22  5         So the bill of sale is certainly evidence of

6    the contract, but it's not the contract that transferred the

7    rights.

8         As to the disclosure of the personal

9    identifiers, filing a document in a State Court is not the

09:12:39 10   type of activity that the Ohio Consumer Sales Practices Act

11   or the FDCPA, the Fair Debt Collection Practices Act was

12   intended to govern.  There have been some Courts that have

13   extended the protections of the Fair Debt Collection

14   Practices Act to false testimony given in court.

09:12:59 15        The idea, though, that a personal identifier

16   disclosed in a document might violate some consumer law has

17   not been adopted by any Court.  The only authority presented

18   by Mr. Jordan is a consent order in the *Veverka* case.  It

19   was a consent order part of a settlement.  It made no

09:13:21 20   findings of law independent of what was presented to the

21   Court by agreement.

22        Most importantly, I think this Court will

23   recognize this Court has rules on redaction of personal

24   identifiers.  This Court has recognized that redaction of

09:13:36 25   personal identifiers or the failure to redact does not

1        provide a private cause of action.

2                 This Court ruled on an identical issue between

3        John Soliday Financial Group, Cheek law office, and

4        Mr. Pittenger who is not a plaintiff to this case, but in an

09:13:54   5        identical case this Court already ruled that that does not

6        state a cause of action and dismissed such a claim on

7        summary judgment.

8                 The Ohio Supreme Court spoke about this.  This

9        was a State Court filing, Mansfield Municipal Court, and in

09:14:08  10        July, July 1st of 2009 the Ohio Supreme Court first had

11        rules in place to regulate the disclosure of personal

12        identifiers.  July 1st, 2009.

13                 The alleged offending document in this case

14        was filed February, 2008, more than a year ahead of time.

09:14:27  15        In February of 2008, there were no Court rules in Ohio that

16        said "Thou shall not disclose personal identifiers."

17                 The rules that exist now from the Ohio Supreme

18        Court rules do not, do not cover the date of birth.  The

19        Supreme Court of Ohio has said the Social Security Number

09:14:49  20        should be redacted as of July 1st, 2009; bank account

21        numbers, credit card numbers, and certain information

22        concerning minors.  But the date of birth is still not part

23        of any regulation by the Ohio Supreme Court under its

24        Supreme Court rules which are Rules 44 through 47 of the

09:15:08  25        Rules of Superintendence.

1          The Bankruptcy Court for the Northern District

2     of Ohio has already held that a violation of redaction rules

3     of the Bankruptcy Court did not create a private cause of

4     action, either an equity under the Court's power or under

09:15:24  5     the Graham Leach Bliley Act, and that was the *Lentz versus*

6     *Bureau of Medical Economics* case rendered by Judge Baxter on

7     June 4th, 2009.

8          With the authority in place from the *Pittenger*

9     decision and the *Lentz* decision from the Northern District

09:15:40  10     Bankruptcy Court and the Ohio Supreme Court rules, we

11     believe this Court should find that there was no violation

12     of any law based upon that State Court filing.

13               THE COURT:  Thank you.

14               MR. GENTRY:  Thank you, Your Honor.

09:16:00  15               MR. REICHENBACH:  Your Honor, regarding the

16     stipulations, will the Court entertain the idea of just

17     considering the stipulations as they are filed, or would the

18     Court prefer that I read the stipulations into the record?

19               THE COURT:  No, you can make use of them.

09:16:18  20     They have been filed.

21               MR. REICHENBACH:  Thank you.

22               THE COURT:  And they are joint stipulations.

23               MR. REICHENBACH:  I would like to read into

24     the record a couple of admissions or written judicial

09:16:29  25     admissions that do not appear in the stipulations, and I'll

1      refer to documents that are already on file with the Court.

2                    First, defendant's motion for summary judgment

3      which is document 18, there's one sentence I want to read

4      from Page -- Page ID number 151.

09:16:50  5                MR. GENTRY:  Your Honor, we object to reading

6      into the record a motion for summary judgment text.

7                    We don't believe it's appropriate.

8                    MR. REICHENBACH:  It's a judicial admission.

9      It's not an exhibit that I will introduce, but there's an

09:17:02 10    admission and I want to draw the Court's attention to it.

11     It's already in the record.

12                    THE COURT:  Well, I mean, obviously, counsel,

13     it's of record.

14                    If he wishes to use it in the context of his

09:17:11 15    case, since we don't have a jury here, I'll hear it.

16                    Go ahead, counsel.

17                    MR. REICHENBACH:  Thank you, Judge.

18                    The motion states at that location:  "On

19     December 19th, 2007, Ameristar Financial Servicing Company,

09:17:28 20    LLC purchased a portfolio of automobile loan deficiency

21     accounts from the original creditor Atlantic Financial

22     Services, Inc. "

23                    And I read that to point out to the Court what

24     the defendants' claim is for how they say they got ownership

09:17:45 25    of the account.

1           I'd like to also read two similar statements

2      from the defendants' discovery requests, I mean our -- their

3      answers to our discovery requests, which are also on file.

4           The first one is John Soliday's responses,

09:18:05 5      this is document 17-8 at Page ID number 134, and it's

6      request number 25.  They state "Defendant" meaning John

7      Soliday "Purchased plaintiffs's debt obligation from

8      Ameristar Financial Services."

9           So I want to make clear that's their theory.

09:18:28 10           Cheek's discovery responses in the record at

11      Document 17-4, Page ID number 109, request number 23, they

12      make a similar statement, "John Soliday Financial Group, LLC

13      purchased plaintiff's debt obligation from Ameristar

14      Financial Services."

09:18:43 15           So we know that's the defendant's theory of

16      how they obtained ownership.

17           At this point I'd like to call Mr. Jordan.

18      And if I may approach, I'll hand him the witness copy of the

19      exhibits.

09:19:05 20           THE COURT:  All right.  Mr. Jordan, if you

21      would come forward, sir.

22

23

24

25

1               JOHN JORDAN,

2         of lawful age, a Plaintiff herein,

3         being first duly sworn, was examined

4              and testified as follows:

09:19:31 5         MR. REICHENBACH:  May I approach, Your Honor?

6         THE COURT:  You may.

7    DIRECT EXAMINATION OF JOHN JORDAN

8    BY MR. REICHENBACH:

9    Q.    Will you state your full name for the record, please?

09:19:44 10   A.    John Matthew Jordan.

11   Q.    What's your address currently?

12   A.    335 Brenda Drive.

13   Q.    And your age?

14   A.    Thirty-five.

09:19:55 15   Q.    Mr. Jordan, when you learned that your Social Security

16   Number, date of birth, address, employment information,

17   phone number and signature were all filed with the Clerk of

18   Court's in Mansfield Municipal Court, without being crossed

19   out and without being filed under seal, how did you feel

09:20:11 20   about that?

21   A.    I was angry; a little bit confused by it.

22   Q.    Do you know if anyone has taken this information?

23   A.    No, I do not.  I'm worried that somebody might,

24   though.

09:20:25 25   Q.    Is there any stress over not knowing whether this has

1       happened?

2       A.    Oh, yeah.  Yeah.

3       Q.    How did you feel about being sued by John Soliday, a

4       company that you never signed a contract with?

09:20:44 5       A.    That was confusing.  One minute it's Atlantic; next

6       thing I know I'm getting something else different from a

7       different company.

8              You know, I didn't know what was going on.

9       Q.    Was there any frustration or stress about the lawsuit

09:21:02 10      since it was a company that you never --

11      A.    Oh, yeah, definitely.  Yeah, they garnished my wages.

12      Yeah, that's stressful enough, especially when you got a

13      family to take care of.

14             MR. REICHENBACH:  Your Honor, that's all the

09:21:19 15      further questions I have for him right now.

16             THE COURT:  Very well.  Any cross?

17             MR. GENTRY:  Thank you, Your Honor.

18         CROSS-EXAMINATION OF JOHN JORDAN

19      BY MR. GENTRY:

09:21:42 20      Q.    Mr. Jordan, you've been sued on other bad debts,

21      haven't you?

22             MR. REICHENBACH:  Objection, Your Honor.

23      Relevance.

24             MR. GENTRY:  Your Honor, this goes to his

09:21:55 25      confusion or worry about being sued.

1      THE COURT:  All right.  I'll allow it.

2           Go ahead.

3  A.   Not that I recall.  This is the first lawsuit that I

4  know of, yeah, so.

09:22:11  5  Q.   You've been garnished as a result of losing judgment

6  against you in other cases in the Mansfield Municipal Court,

7  right?

8  A.   Yeah.

9  Q.   And, in fact, while you worked at Wal-Mart, you were

09:22:27 10  garnished for quite a period of months, right?  Several

11  months?

12  A.   Yes.  That's right.

13  Q.   And that was not by John Soliday Financial Group,

14  correct?

09:22:35 15  A.   No.

16  Q.   That was by someone else, correct?

17  A.   Yes.

18  Q.   Okay.  And that was in 2008 up to 2009, correct?

19  A.   Yeah.  Yes.

09:22:48 20  Q.   That was the time you worked at Wal-Mart, right?

21  A.   Yes.  That's right.

22  Q.   And after you were sued by John Soliday Financial

23  Group on this account, you obtained counsel, correct;

24  Mr. Reichenbach?

09:23:00 25  A.   Yes.

1    Q.    And you hired him on June 23rd, 2008, right?

2    A.    Sounds about right.

3    Q.    And you did not make an application to the Court to

4    have -- to have the document attached to the complaint that

09:23:20 5    had your Social Security on it, you did not make an

6    application to the Court to have that sealed until almost

7    three months later, right?

8    A.    I believe so.

9    Q.    And that's because you really weren't worried about it

09:23:39 10    during that period of time?

11    A.    Oh, no, I'm worried about it.  Somebody gets ahold of

12    that, they can do anything with it.

13    Q.    This worry that you described from having your Social

14    Security Number or date of birth disclosed, were you

09:23:51 15    worried -- were you worried that it might have been

16    disclosed in other cases filed against you in Mansfield

17    Municipal Court?

18    A.    Oh, of course.

19    Q.    And you haven't looked to see if your Social Security

09:24:02 20    Number or date of birth has been disclosed in other cases

21    against you in Mansfield Municipal Court, have you?

22    A.    No, I haven't.

23    Q.    And you haven't taken any steps to learn whether your

24    identity has been compromised in any point, have you?

09:24:13 25    A.    No, I haven't.

1    Q.    You never consulted with a physician or psychologist

2    or psychiatrist about this worry, did you?

3    A.    No.

4    Q.    You didn't take any medications to deal with the worry

09:24:36 5    or the effects of the worry, did you?

6    A.    No.

7    Q.    You didn't lose sleep over this, did you?

8    A.    Well, that, yeah, I have.

9              MR. GENTRY:  I'd like to approach the witness

09:24:48 10    with a copy of his deposition transcript, Your Honor, which

11    was -- and I can provide the Court a copy as well.

12              May I approach the bench --

13              THE COURT:  You may, counsel.

14              MR. GENTRY:  -- with a paper copy of the

09:25:16 15    deposition?

16              THE COURT:  Thank you.

17              MR. GENTRY:  Thank you, Your Honor.

18              If I may approach the witness, Your Honor.

19    BY MR. GENTRY:

09:25:40 20    Q.    Mr. Jordan, if I could direct your attention to Page

21    46 of your deposition transcript, Lines 15 and 16.

22              On Line 15 of Page 46 I asked you under oath

23    in your deposition, "Did you lose sleep over it?"

24              On Line 16 you responded "No."

09:25:55 25              Do you remember that testimony?

|  |  |
|---|---|
| 1 | A.    Yes. |
| 2 | Q.    And so you did not lose sleep over this worry, did |
| 3 | you? |
| 4 | A.    Yes, I did. |
| 09:26:02 5 | Q.    So when I took your deposition you lied to me? |
| 6 | A.    I was nervous then. |
| 7 | Q.    Are you nervous now? |
| 8 | A.    Yes, I am nervous. |
| 9 | Q.    Which is the truth; did you lose sleep or not? |
| 09:26:12 10 | A.    Yes, I did. |
| 11 | Q.    But when I asked you under oath you said "No." |
| 12 |        Mr. Jordan, this trial today has caused you to |
| 13 | be anxious, hasn't it? |
| 14 | A.    Nervous, yeah. |
| 09:26:29 15 | Q.    It's causing you to be nervous, it's causing you to |
| 16 | worry, isn't it? |
| 17 | A.    Yeah, it is. |
| 18 | Q.    Mr. Jordan, your personal identifiers, Social Security |
| 19 | and date of birth, have been in the Mansfield Municipal |
| 09:26:55 20 | Court system since September of 2006, right? |
| 21 | A.    I guess so. |
| 22 | Q.    In fact, you received a traffic citation in 2006 and |
| 23 | that traffic citation was filed with the Court and it had |
| 24 | your Social Security and date of birth on it, didn't it? |
| 09:27:18 25 |        Right?  It had that, did it not? |

```
 1    A.    That, I don't know.

 2               Is it in here?  I think it is.  I'm not sure

 3    if it did or not.

 4               MR. GENTRY:  Your Honor, may I approach the

 5    witness?

 6               THE COURT:  You may.

 7               MR. GENTRY:  Counsel, this is a document that

 8    was provided to you last week.

 9               MR. REICHENBACH:  I have a copy.

10    BY MR. GENTRY:

11    Q.    I'm showing you a traffic citation, Mr. Jordan, issued

12    to you and filed in Mansfield Municipal Court with a seal

13    appearing at the bottom of this piece of paper.

14               Do you see your date of birth disclosed there?

15    A.    Yes.

16    Q.    Do you see that right before that there's a line that

17    has been redacted?

18    A.    Um-hmm.

19    Q.    Is that yes?

20    A.    Yes.

21    Q.    And you see that you can see that from the back?

22    A.    Yes.

23    Q.    You can see that this is a fresh redaction;

24    essentially it was written on this piece of paper?

25    A.    Yeah.
```

1          MR. GENTRY:  Your Honor, may I approach with

2     the original for the Court?

3          THE COURT:  You may.

4          MR. GENTRY:  This is the original filing

09:28:37  5     certified by the Municipal Court of Mansfield.

6          THE COURT:  Well, I take it there's no

7     objection to the characterization of the document, or is

8     there?

9          MR. REICHENBACH:  No.

09:28:47 10          THE COURT:  All right.  Do you intend to make

11     this an exhibit, counsel?

12          MR. GENTRY:  Yes, Your Honor.  I wasn't sure

13     if I could use it based upon his testimony, but I believe

14     his testimony says he believes it was filed, believes it was

09:29:00 15     disclosed.

16          MR. REICHENBACH:  Your Honor, excuse me, I

17     will object to that because it was not disclosed in time to

18     conduct discovery.

19          It was not in the trial brief or the exhibit

09:29:11 20     list.

21          MR. GENTRY:  Your Honor, we disclosed this

22     last week, the first time we became aware of the document's

23     existence.  We disclosed it the same day we were able to

24     retrieve it from the Mansfield Municipal Court.

09:29:26 25          We simply did not know of its existence before

1    last week.

2                    MR. REICHENBACH:  I guess I would argue if

3    it's been in the Court records since 2006 as they say, they

4    could have looked before.

09:29:37  5              THE COURT:  Well, you're not disputing the

6    authenticity of the document; you're just indicating you

7    didn't have time to -- well, what are you saying, counsel?

8                    MR. REICHENBACH:  Well, I'm saying that we may

9    have prepared the case differently, including some kind of

09:29:55 10   other discovery or other preparation for trial had we known

11   this was going to be used as an exhibit prior to the cutoff

12   for discovery.

13                   It's hard for me to elaborate on that because

14   I didn't know it was going to be used in some way until

09:30:14 15  about a week ago.

16                   THE COURT:  All right.  Well, the Court will

17   sustain the objection as to the introduction of the exhibit.

18                   The testimony is the testimony insofar as his

19   recollection or understanding.

09:30:29 20  BY MR. GENTRY:

21   Q.    Mr. Jordan, your account that you did not pay off on

22   this car was transferred and sold to John Soliday Financial

23   Group LLC, correct?

24   A.    I don't know that.  I don't know.

09:30:50 25  Q.    You have seen the 11-page contract between John

1    Soliday Financial Group and Ameristar Financial Servicing,

2    correct?

3    A.    That's correct, but I don't know who they are.  I've

4    never heard of them.

5              So the only people I've heard of was Atlantic

6    so, I mean, I've never heard of them.  One thing it's

7    Atlantic, so, you know, got the contract and then John

8    Soliday's got it.  I don't know nothing about that.

9    Q.    Atlantic attempted to collect this balance from you,

10   correct?

11   A.    Yeah.

12   Q.    And John Soliday Financial Group has attempted to

13   collect the balance from you, correct?

14   A.    Yes.

15   Q.    And no one else has attempted to collect that balance

16   from you, correct?

17   A.    Not that I know of, no.

18   Q.    So you're not getting calls from other creditors or

19   other groups about this deficiency balance on this car, are

20   you?

21   A.    No.

22   Q.    And, in fact, when John Soliday Financial Group came

23   into the picture and first communicated with you, the

24   communications from Atlantic to you ceased, didn't they?

25   A.    I believe so.

1    Q.    I want to take you back just a second.

2          I asked you earlier if you had been sued and

3    you said no, but then I asked you if you had been garnished

4    by creditors other than John Soliday and you answered yes.

09:32:29  5          Does that refresh your recollection that

6    you've been sued by other creditors?

7    A.    Yes.

8    Q.    Okay.  And so again I'd like to direct the witness's

9    attention, the Court's attention to Mr. Jordan's deposition

09:32:41  10   at Page 5, Line 23 where he was asked -- Mr. Jordan, if you

11   could look at the deposition, Page 5, Line 23 of your

12   deposition.

13         I apologize, I brought it back with me.

14   A.    Page 5?

09:33:09  15   Q.    On Page 5, Line 23, Mr. Jordan.

16   A.    Oh, okay.

17   Q.    I asked you if you had been sued by anyone else, and

18   you did not disclose that you had been sued by anyone else,

19   did you?

09:33:31  20   A.    No.

21   Q.    But, in fact, you have been sued by other persons,

22   haven't you?

23   A.    Yes, I have.

24   Q.    And so at deposition Page 5, Line 23 you were not

09:33:40  25   telling me the truth, were you?

1  A.    I actually forgot about it, to be honest with you.

2  Q.    But you remember the stress and aggravation that were

3  caused to you from the multiple garnishments that happened

4  in this other case, don't you?

09:33:58  5  A.    Yeah.

6  Q.    You remember the hardships it caused you while you

7  were at Wal-Mart, that you were garnished by someone other

8  than John Soliday Financial Group?

9  A.    Yeah.

09:34:06  10  Q.    And John Soliday Financial Group obtained a default

11  judgment against you, correct?

12  A.    Yes.

13  Q.    And John Soliday Financial Group obtained one

14  garnishment payment from you, correct?

09:34:20  15  A.    I think so.  I'm not sure.

16  Q.    And that -- and that money was refunded to you when

17  you filed your motion to vacate the judgment or set aside

18  the judgment, correct?

19  A.    Yes, it was.

09:34:30  20  Q.    You suffered no loss as a result of your Social

21  Security Number or date of birth being placed in the

22  Municipal Court records by John Soliday or its attorneys,

23  correct?

24  A.    No loss, but I've been worried about it because I

09:34:53  25  am -- can I give you an example of something that happened

1    in my family?

2    Q.    No, I'm not asking about your family, sir.  I'm not

3    asking about your family.

4              When I took your deposition, I asked you if

09:35:06 5    you were going -- on Page 18, Line 18, I asked you if you

6    were going to ask this Court to award you money in this

7    case.

8              On Page 18, Line 18.

9    A.    I'm trying to get to it.  Okay.

09:35:23 10    Q.    Do you see that on Page 18, Line 18?

11    A.    Yes.

12    Q.    I asked you if you were going to ask this Court to

13    award you money and you said "No," didn't you?

14    A.    Yes, I did.

09:35:31 15              MR. REICHENBACH:  Your Honor, I object to that

16    question at the deposition and today both.

17              It's not asking about the facts; it was asking

18    about what he intended to do through the lawsuit.

19              MR. GENTRY:  Your Honor, this goes directly to

09:35:45 20    does he have damages, does he have a loss, and I wanted to

21    know "How do we quantify this; what are you going to ask

22    for," and he told me in his deposition "I can't quantify it,

23    I'm not going to ask for money."

24              THE COURT:  Well, I agree that this lawsuit

09:35:58 25    includes a claim for damages based on the consequence of the

1    allegations here, but I just would caution counsel in terms

2    of referring back and forth between the deposition, make

3    sure you get the -- lay the foundation for referring back to

4    the deposition.

09:36:17  5              I'm not sure how we got back to the deposition

6    in light of what he's testified to here on his direct.

7                    MR. GENTRY:  Thank you, Your Honor.

8                    I have no further questions for him, Your

9    Honor.

09:36:40 10                  THE COURT:  You may -- well, any redirect?

11                   MR. REICHENBACH:  Very briefly, Your Honor.

12                   THE COURT:  Yes.

13            REDIRECT EXAMINATION OF JOHN JORDAN

14    BY MR. REICHENBACH:

09:36:49 15    Q.    Mr. Jordan, when you were sued by some other company

16    that Mr. Gentry asked you about, you looked at the complaint

17    that they filed against you?

18    A.    Yes.

19    Q.    And did that disclose your Social Security Number in

09:37:01 20    that other case?

21    A.    No.

22    Q.    And did you have any reason to think that that other

23    company didn't own the account?

24    A.    No.

09:37:09 25    Q.    So it was a different situation than --

```
 1   A.    Yes.

 2   Q.    -- when John Soliday sued you, right?

 3               MR. GENTRY:  Objection.  Objection, Your

 4   Honor.  This isn't relevant.

 5               THE COURT:  Well, if that's your objection,

 6   I'll overrule it.

 7   BY MR. REICHENBACH:

 8   Q.    Did you look at your credit report since -- after your

 9   deposition was taken?

10   A.    Yeah.  I believe so.

11               I think it's in here.  Yeah, I took a look at

12   it.

13   Q.    And there wasn't anything on there giving you

14   information that somebody had taken --

15   A.    No.

16   Q.    So you did take at least one step to find out if

17   somebody had taken --

18   A.    Yes.

19   Q.    -- your personal information?

20               MR. GENTRY:  Your Honor, I object to testimony

21   what's in the credit report, what's not in the credit

22   report.

23               THE COURT:  I'm sorry?

24               MR. GENTRY:  We object to the testimony based

25   on what's in that credit report.
```

```
 1              I understand he can say he obtained a credit

 2   report, but the contents of the credit report, we object to

 3   him testifying.  We have never seen the contents.

 4              MR. REICHENBACH:  I'll withdraw that part of

09:38:14 5   the question.

 6              THE COURT:  That part of the question will be

 7   sustained.

 8              MR. REICHENBACH:  Thank you.

 9              No other questions for Mr. Jordan.

09:38:18 10              THE COURT:  All right.  Mr. Jordan, you may

11   step down.

12              THE WITNESS:  Okay.

13              (Witness excused).

14              THE COURT:  Do you have anything further,

09:38:24 15   Mr. Reichenbach?

16              MR. REICHENBACH:  No other evidence.  Excuse

17   me.  I would like to move for admission of six of the Joint

18   Exhibits, Numbers 1, 2, 3, 6, 7 and 8.

19              THE COURT:  And I take it there's no

09:38:54 20   objection.

21              MR. GENTRY:  Not for 1 through 8, Your Honor,

22   no objection.

23              THE COURT:  Well, he only offered 1, 2, 3, 6,

24   7 and 8.

09:39:04 25              MR. GENTRY:  No objection, Your Honor.
```

1            THE COURT:  Those will be admitted.

2            MR. REICHENBACH:  And we have no other

3    witnesses, Your Honor.

4            THE COURT:  All right.  Thank you.

09:39:12  5            Plaintiff rests?

6            Counsel, plaintiff rests?

7            MR. REICHENBACH:  Yes, Your Honor.

8            THE COURT:  All right.  Mr. Gentry.

9            MR. GENTRY:  Thank you, Your Honor.

09:39:31 10            Your Honor, at this time we move for a motion

11    for judgment as a matter of law under Rule 52, I believe

12    it's (c).  Plaintiff has simply not sustained his burden of

13    proof on either of his claims.

14            The first claim as to whether there was a

09:39:51 15    contract, there's been no testimony explaining the contract

16    offered by plaintiff.  There's been no evidence presented to

17    the Court that would explain the purchase consideration or

18    negotiations between Ameristar Financial Company and

19    Atlantic Financial.

09:40:18 20            Plaintiff's position is that Ameristar

21    Financial Servicing did not acquire the account, but the

22    contract that's at issue in this case was not introduced by

23    Mr. Jordan.  The contract -- he has not shown the contract,

24    he's not introduced evidence on the contract, no testimony

09:40:39 25    on the contract.  He did not move for the admission of that

1      contract.

2              That contract as clearly stipulated to between

3      the parties is the contract at issue.

4              Plaintiff rests entirely that claim on a bill

09:40:52  5      of sale that plaintiff has moved for admission of.  That

6      bill of sale is nothing more than a receipt showing that a

7      transaction took place, and the bill of sale is not

8      required.

9              There's been no showing that a different

09:41:07 10      entity, Ameristar Financial Company, actually negotiated for

11      this purchase or actually engaged in a purchase contract.

12              Plaintiff merely has a one-page bill of sale

13      that by itself does not transfer the rights under the

14      contract.

09:41:28 15              On the second claim, Your Honor, we move for a

16      motion for judgment as a matter of law on the claim that the

17      personal identifiers were disclosed.  It's clear that

18      Mr. Jordan's personal identifier -- personal identifiers

19      have been in the Municipal Court system for years, and it's

09:41:49 20      clear, also, that the Ohio Supreme Court did not direct Ohio

21      lawyers to redact those before July 1st of 2009.

22              It's also clear that Mr. Jordan knew and was

23      aware of his personal identifiers being attached to the

24      complaints and had counsel for approximately 86 days before

09:42:10 25      he moved to seal the record.  That relief was available to

1    him the entire time, and he's failed to mitigate any damages

2    as a result of that.  He's failed to come to the Court with

3    clean hands.

4            The claims that have been presented to the

09:42:26  5    Court are simply without merit, and we ask the Court to

6    dismiss them with prejudice.

7            THE COURT:  Thank you.

8            Mr. Reichenbach.

9            MR. REICHENBACH:  Thank you, Judge.

09:42:42  10            Addressing the last point first, the defense

11    of unclean hands is not available under either of the two

12    statutory claims that we make, and that argument has been

13    addressed in the briefing.

14            The motion just made essentially is about the

09:43:02  15    same as defendants' previous motion for summary judgment,

16    but I understand we're at trial so I do want to address the

17    substance of the motion.

18            Regarding the assignment of title problem, we

19    have two distinct arguments.

09:43:23  20            First, Mr. Jordan -- well, we've stipulated

21    that Mr. Jordan did not contract with John Soliday.

22    That's -- we're in agreement on that.

23            That shifts the burden to the defendants to

24    prove that they had a basis for suing him.  If he didn't

09:43:44  25    contract with John Soliday, then John Soliday has to show

1    how it had a right to collect anything from him.

2              But aside from that, we believe that the

3    evidence that's already stipulated, and in particular Joint

4    Exhibit 2 and to some extent Joint Exhibit 3, which I'll

09:44:03  5    explain in more detail, show affirmatively that John Soliday

6    did not gain title to Mr. Jordan's account.

7              The defendants have not introduced any

8    evidence of any transfer to John Soliday.  The only

9    assignment that -- and I'm careful with the word

09:44:27 10    "assignment."  I'm not talking about a contract that some

11    parties intended to fulfill at some point, but the

12    actual -- the only assignment that backs up their right to

13    collect anything was to Atlantic Financial Services, Inc.

14    and that's on the original contract that Mr. Jordan signed.

09:44:41 15              The significance of the bills of sale, as

16    counsel has referred to them, are that they are more than

17    bills of sale.  The documents themselves, and I'm talking

18    about Joint Exhibits 2 and 3, say on their face "Bill of

19    sale and assignment."  The defendants might wish that they

09:45:04 20    didn't say "Assignment," but they do.

21              The assignments are the documents which pass

22    title, assuming anything was transferred.

23              They claim that this Joint Exhibit 2, the bill

24    of sale and assignment from Atlantic Financial Services, LLC

09:45:21 25    to Ameristar Financial Company, LLC, they claim that that

1    contained not one, but two errors, typos they call them, and

2    the errors they say are the names of the parties.

3           And if the Court denies the motion, you might

4    hear testimony about their correction.  We don't need to get

09:45:41  5    into that because it hasn't happened yet, but these were the

6    assignments.

7           The authority that the defendants cite in

8    their supplemental trial brief about bills of sale not being

9    required applies to the sale of goods, and this whole thing

09:45:58 10    started with a sale of goods, it was a car, but neither

11   Atlantic, nor Ameristar, nor John Soliday are claiming they

12   bought a car.  They are claiming they bought accounts.

13   Accounts are not goods, so that authority has no application

14   to the sale of accounts.

09:46:15 15          So, in fact, these assignments are not mere

16   receipts, they are the documents by which title was

17   transferred.

18          The claim that we're making with regard to the

19   chain of title problems is that it's unfair for a company to

09:46:50 20   try to collect money that it does not own.  They're trying

21   to -- I should restate that a little more clearly.

22          They're trying to collect on an account that

23   they do not own.

24          In plain English, it's unfair.  Under the

09:47:06 25   authority that we've cited under the FDCPA and the contract

1    with CSPA it's unfair.

2            With regard to the filing of the Social

3    Security Number without redaction, without asking for it to

4    be sealed, we're not claiming that Court rules create a

5    cause of action.  That's a red herring.  We're claiming that

6    the Fair Debt Collection Practices Act and the Ohio Consumer

7    Sales Practices Act clearly provide a cause of action.

8            The legal issue is does filing something in

9    court, is that within the intent of the legislators?  And

10    that slightly broader issue than the Social Security Number

11    issue has been addressed by Courts, and that's in our

12    briefing.  Filing something in court is clearly a

13    representation covered by those two statutes.

14            The more narrow issue, whether filing

15    someone's Social Security Number violates those statutes,

16    has not been litigated very much.  That's why we got as far

17    as a trial today.

18            And I'd like to squarely address this Court's

19    prior decision in that *Pittenger* case.  The defendants are

20    relying on that for the proposition that filing a Social

21    Security Number does not violate the FDCPA.  We need to look

22    at that a little more closely because the holding was not

23    that broad.

24            The holding was that filing a Social Security

25    Number does not violate Section 1692d.  That section is

1       about harassment or abuse.  By the way, that, that case that

2       this Court -- it was not Your Honor, but another Judge in

3       this Court cited *Feltman versus Blatt* out of Illinois, it

4       was brought by a pro se plaintiff, not that there's anything

09:48:52  5   wrong with that, but he brought his complaint under 1692d

6       and that's why that Court ruled that way, because that Court

7       felt that filing a Social Security Number is not harassment.

8       Personally I agree with that.  It's unfair; it's not

9       harassment.

09:49:10 10          I'd like to quote from Judge Polster's opinion

11      in *Pittenger*.  "We do not think that filing an exhibit in a

12      lawsuit is conduct the natural consequence of which is to

13      harass, abuse or oppress."  He goes on to say "This is not

14      the type of behavior contemplated by Section 1692d."

09:49:34 15          If the Court looks at our complaint, 1692d is

16      not in there.  We don't allege that the defendants' conduct

17      is abusive or harassing.  We allege that it's unfair and

18      deceptive.

19                That's Section 1692e and f.

09:49:50 20          So there's no problem with the holding of

21      Judge -- excuse me -- the Court in Illinois in *Feltman* in a

22      contrary ruling here, because we're talking about two

23      totally different sections of the FDCPA.

24                For those reasons, we believe the Court should

09:50:16 25   not rule as a matter of law that the complaint should be

1    dismissed, and we should allow the defendants the

2    opportunity to prevent their case -- present their case.

3                    Thank you.

4                    THE COURT:  Thank you, counsel.

09:50:29  5          The Court finds that the arguments proffered

6    by the defendant in support of its motion for dismissal at

7    this juncture are similar to the ones made in the briefing

8    on motion for summary judgment obviously which

9    Judge -- another Judge in this court had previously denied,

09:51:06  10   and the Court at this juncture is not inclined to grant the

11   motion.

12                   I will hear defendants' case, so the motion

13   for verdict at this juncture is denied.

14                   I won't -- as to the -- and that will be

09:51:44  15   denied as to both counts.

16                   So, Mr. Gentry, you can proceed with your case

17   at this time.

18                   MR. GENTRY:  Thank you very much, Your Honor.

19                   Your Honor, at this time we call Bill Bowman

09:52:03  20   or Robert Bowman.  I will secure his attendance.

21                   THE COURT:  I hope he didn't go too far.

22                   MR. GENTRY:  Your Honor, may we take a

23   five-minute men's room recess?

24                   THE COURT:  Yes, why don't we take -- that

09:52:16  25   would be appropriate, ten minutes, and we will proceed with

1    testimony.

2                    MR. GENTRY:  Thank you, Your Honor.

3                    (Recess taken).

4                    THE COURT:  You may be seated.

10:06:34  5                    Mr. Gentry, it occurs to me that perhaps I

6    should be a little more expansive in terms of why I denied

7    your motion.

8                    I looked carefully at the summary judgment

9    ruling, obviously, and obviously counsel has -- both counsel

10:07:12  10   are aware of Judge Gallas' order in that regard, and I find

11   for purposes of trial that the plaintiff has at least

12   presented sufficient facts to warrant the case going

13   forward.

14                    And obviously those facts are relating to the

10:07:42  15   question of whether or not the debt and the attempt to

16   collect the debt was appropriate under the facts exhibited

17   in the exhibits and the testimony at this juncture, in any

18   event.

19                    Before we go forward, however, I would like to

10:08:08  20   see counsel at the bench, so if you would.  And this is off

21   the record.

22                    (Side-bar conference had off the record).

23                    THE COURT:  You may step back.

24                    Mr. Gentry, you, as I understand it,

10:09:48  25   intended -- you need to address the Court regarding a

1    potential conflict?

2              MR. GENTRY:  Yes.  Thank you, Your Honor.

3              THE COURT:  And will this impact at all,

4    assuming we go forward today, on the testimony of -- I see

10:10:02  5    Mr. Bowman is in the back of the room.

6              MR. GENTRY:  No, it would not impact

7    Mr. Bowman's testimony, Your Honor.

8              THE COURT:  All right.  Thank you.

9              MR. GENTRY:  Thank you, Your Honor.

10:10:12 10              John Soliday Financial Group and Cheek Law

11    Offices have evidence they wish to introduce at this trial

12    that we recently became aware of that I have a conflict of

13    interest in presenting.

14              THE COURT:  And when you say "Recently became

10:10:27 15    aware of," when -- when was this evidence discovered?

16              MR. GENTRY:  The evidence was discovered, I

17    believe, on Thursday, and I became aware of the conflict on

18    Friday.

19              And we weren't sure this morning based on the

10:10:38 20    testimony if my clients would seek to introduce that

21    evidence, but my client has asked me to introduce that

22    evidence.

23              I've reviewed the ethical rules, and I don't

24    believe that I can introduce that evidence my client

10:10:55 25    believes is important and helpful in this trial.

1              MR. REICHENBACH:  May I respond, Your Honor?

2              THE COURT:  You may.

3              MR. REICHENBACH:  I have two objections.

4              The first is that whatever new evidence there

10:11:12 5     is, I object because it was not disclosed in the trial

6       brief, I'm assuming.

7              And the other objection is to

8       Mr. Cheek -- well, I guess I'm unclear.

9              Is Mr. Gentry asking for Mr. Cheek to act as

10:11:28 10    an attorney or a witness?  If a witness, I object because he

11      was not in their trial brief listed as a witness until I

12      served a subpoena.  I later withdrew that subpoena after we

13      stipulated and I didn't need to call him any more.

14             If he intends to act as an attorney, I think

10:11:46 15    the problem with that is that he essentially is a party

16      because he's the sole member of Cheek Law Offices.

17             THE COURT:  Well, as to the first prong of the

18      issue, obviously this, you've identified it, articulated it

19      as recently discovered evidence.

10:12:30 20            Discovery obviously has been long closed in

21      this case, and so it's awkward to try to get to why this

22      evidence is just now being discovered such that it should be

23      allowed.

24             Obviously we're on the day of trial so there's

10:12:46 25    clear prejudice to the plaintiff if the Court were to allow

1    it.

2           Can you address that foundation as to at least

3    the portion that would relate to the timeliness and why the

4    Court should in any way consider on the day of trial

10:13:08  5    evidence that was obviously not disclosed at an earlier

6    point in time to avoid prejudice to the plaintiff?

7           MR. GENTRY:  Yes, Your Honor.

8           The evidence simply was not discovered earlier

9    because we did not know about it.  We didn't know to look

10:13:25 10    for it.

11           The evidence I believe that my clients intend

12    to offer could come through the testimony of Mr. Jordan

13    himself, but that testimony and any impeachment of that

14    testimony would create the conflict that I have that has

10:13:44 15    arisen that my clients asked me to present.

16           The timing was just the result of not knowing

17    about it, not having it prior to last week.  We learned it

18    on Thursday just as a result of luck, and the evidence was

19    not anticipated by either side before that.

10:14:09 20           THE COURT:  And was this evidence in existence

21    prior to last week?  I take it it was.

22           MR. GENTRY:  Yes.  Yes, it was.

23           MR. REICHENBACH:  Your Honor, there were

24    several pieces of evidence that I learned after discovery

10:14:23 25    closed and we didn't present them.

```
          1            And I guess further, they've already had the

          2    chance to question Mr. Jordan who is done testifying.

          3            MR. GENTRY:  Your Honor, on that point, Your

          4    Honor, we had subpoenaed Mr. Jordan for testimony in this

10:14:45  5    case.  If the defense was to present testimony, we would

          6    call Mr. Jordan under the subpoena that we issued to him and

          7    seek to elicit this testimony.

          8            THE COURT:  Mr. Jordan is under subpoena by

          9    the defendants.

10:15:05 10            MR. REICHENBACH:  Well, I think technically it

         11    wasn't served properly.

         12            THE COURT:  Well --

         13            MR. REICHENBACH:  But he's here and we're

         14    obviously not going to prevent him from testifying.

10:15:15 15            I think the issue really goes more to

         16    nondisclosure of evidence and the prejudice that we haven't

         17    been able to prepare for it.

         18            MR. GENTRY:  Your Honor, the relief we're

         19    seeking, to be clear, is that the defendants be permitted to

10:15:36 20    introduce this evidence with other counsel, and I don't see

         21    how that could occur here today, and so the relief we're

         22    seeking is essentially a continuance to have other counsel

         23    appear to present this evidence.

         24            THE COURT:  Well, I'm concerned on several

10:15:56 25    levels.
```

1      One, as it relates to whether or not it would

2   be admitted at all, the Court would -- is not sure based on

3   the record as it states right now, that is what I've heard

4   thus far, that I'm in a position to rule as to why I should

10:16:15   5   allow this eleventh, twelfth hour evidence.

6      I know the representation is that you just

7   discovered it, you didn't know about it, but that doesn't

8   answer the question as to whether or not it should have been

9   discovered at an earlier point in time.  In light of the

10:16:33  10   Court's order, the trial date has been set for -- I'm

11   not -- you know, however long it's been set for, and there's

12   no question that there's a strong likelihood that plaintiff

13   would be prejudiced by the introduction of the evidence,

14   which, you know, that's why you're offering it, frankly,

10:16:55  15   because that's your theory.

16      But the question the Court would need to

17   resolve is whether or not it's admissible.

18      Your -- you've also indicated that you have a

19   conflict if that evidence was introduced which would give

10:17:10  20   rise to, even if I were going to admit it, the need for

21   other counsel to be involved in the presentation of the

22   evidence.

23      So I want to give each side a chance to

24   address the issue separately.  My question is you have

10:17:38  25   Mr. Bowman and that's it, other than Mr. Jordan?

1    MR. GENTRY:  Correct, Your Honor.  We can

2  proceed today with Mr. Bowman, his testimony would not be

3  impacted by this, and we would -- our position is we could

4  reserve Mr. Jordan's testimony based on the Court's ruling

10:18:01  5  of whether the defendants could obtain separate counsel to

6  solicit the testimony and any impeachment of that testimony

7  provided by Mr. Jordan.

8    And so I believe we can proceed today through

9  Mr. Bowman's testimony and the exhibits that have been

10:18:24 10  identified, and ask the Court for leave to continue until

11  separate counsel can be obtained to present the remainder of

12  Mr. Jordan's testimony and impeachment via documents.

13    THE COURT:  Well --

14    MR. REICHENBACH:  For the record, we object to

10:18:50 15  the continuance, to the request for continuance.

16    THE COURT:  All right.  Let's -- let's hear

17  Mr. Bowman's testimony.  I want to give some thought to

18  whether or not I'm even going to allow the request for

19  continuance.  Obviously I would not allow the introduction

10:19:16 20  of the evidence without giving plaintiff's counsel

21  opportunity to raise their arguments and get your response

22  to the arguments regarding the timeliness of this discovery,

23  as to whether or not it should be admitted at all.

24    And if I decide to admit it, then we'd have to

10:19:44 25  allow time for counsel.

1          So let's get the testimony in.  I'll give you

2     some time over the lunch hour, depending on when the

3     testimony concludes.  Let's get Mr. Bowman's testimony and

4     then we'll see where we are.

10:20:11  5               MR. GENTRY:  Thank you, Your Honor.

6               MR. REICHENBACH:  Thank you.

7               MR. GENTRY:  Thank you, Your Honor.

8          The defense calls Robert Bowman to the stand.

9               THE COURT:  Mr. Bowman, if you'd come forward,

10:20:29 10     please.

11                    ROBERT BOWMAN,

12        of lawful age, a witness called by the Defendants,

13             being first duly sworn, was examined

14                and testified as follows:

10:20:45 15     DIRECT EXAMINATION OF ROBERT BOWMAN

16     BY MR. GENTRY:

17     Q.    Good morning.  Could you give us your name, please?

18     A.    Robert Bowman.

19     Q.    Mr. Bowman, are you employed?

10:20:54 20     A.    Yes, sir.

21     Q.    Who's your employer?

22     A.    Tebo Financial Services.

23     Q.    And was Tebo Financial Services ever known by a

24     different name?

10:21:06 25     A.    Yes, it was Atlantic Financial Services.

1    Q.    When did that name change occur?

2    A.    May of 2010.

3    Q.    Okay.  Did you work for Atlantic Financial Services?

4    A.    Yes, I did.

10:21:18  5    Q.    When did you start with Atlantic Financial Services?

6    A.    Well, I was -- prior -- it was originally known as Pro

7    Finance back in 1993, and I was working for them then.

8              So I've worked since 1993 with the company.

9    Q.    Do your duties for Tebo, and when you worked for

10:21:45  10   Atlantic, include handling of the sale of accounts from

11   Atlantic to any other entities?

12   A.    Yes.

13   Q.    Okay.

14             MR. GENTRY:  May I approach the witness, Your

10:21:59  15   Honor?

16             THE COURT:  You may.

17   BY MR. GENTRY:

18   Q.    I'm going to hand you what's been marked as Joint

19   Exhibit 1.

10:22:21  20             Do you recognize that document?

21   A.    Yes, I do.  I don't have my glasses so I don't see it

22   super clear, but yes, I recognize the document.

23   Q.    Okay.  What is that document?

24   A.    It's a retail sales installment contract between John

10:22:37  25   Jordan and Pro Car Auto Group.

1      MR. GENTRY:  Your Honor, if I may approach the

2    witness again.

3      THE COURT:  You may.

4    BY MR. GENTRY:

10:22:51  5    Q.    I'm going to hand you another document, a yellow

6    document.

7      I'm going to ask you, is that the same

8    document that the photocopy represents in Joint Exhibit 1?

9    A.    Yes, it is.

10:23:08 10    Q.    Okay.  Is that a copy that's easier for to you read,

11    the yellow copy?

12    A.    Yes.  Yes, it is.

13    Q.    That Exhibit 1, is that or was that document a part of

14    Atlantic's business records?

10:23:30 15    A.    Yes, sir.

16    Q.    Can you tell me who the parties were to that document?

17    A.    It was between John Jordan and Pro Car Auto Group.

18    Q.    Okay.  How did Atlantic come to have that document as

19    part of its business records?

10:23:52 20    A.    The contract was sold and assigned to Atlantic

21    Financial Services.

22      MR. REICHENBACH:  Your Honor, I object because

23    he's asking for evidence that violates Federal Rule of

24    Evidence 1002 because he's attempting to orally testify to

10:24:07 25    the content of a document, and that document is not before

1    us.

2              MR. GENTRY:  Your Honor, I'm simply asking him

3    to explain so I don't have to lead him as if I were calling

4    him on cross about what the document represents and his

10:24:25  5    familiarity with it.

6              THE COURT:  At this point I'll overrule the

7    objection.

8              He's testified that this is a, without

9    objection, that this is a business record of Atlantic

10:24:46 10    Financial so on that basis, that's sufficient foundation for

11    the question that was objected to.

12              So I'll allow it at this point.

13    BY MR. GENTRY:

14    Q.    I'm going to hand you another witness.

10:25:08 15              MR. GENTRY:  Your Honor, if I may approach

16    again.

17    Q.    Hand you another document, I'm sorry.

18              This is Joint Exhibit 4.

19              Do you recognize that document?

10:25:41 20    A.    Yes, sir.

21    Q.    What is that document?

22    A.    This is a purchase and sale agreement.  We sold a

23    block of contracts to Ameristar Financial Servicing Company,

24    sold from Atlantic Financial Services.

10:26:01 25              This gives the terms and conditions of the

1   sale.

2   Q.    Was the Exhibit 1, the contract signed by John Jordan,

3   was that contract and rights under it transferred under this

4   Exhibit 4 contract?

10:26:21  5              MR. REICHENBACH:  Objection, Your Honor.

6   Again the Rule of Evidence 1002 prohibits that testimony.

7              THE COURT:  Well --

8              MR. REICHENBACH:  There was an assignment of

9   accounts according to this Joint Exhibit 4 that was attached

10:26:32 10  to it and it's not before the Court, and he's attempting to

11  orally testify to the content of that document.

12             THE COURT:  Counsel, I need more of a

13  foundation which is currently not in the record to allow

14  that, so I sustain the objection.

10:26:52 15  BY MR. GENTRY:

16  Q.    You testified earlier that Atlantic Financial has sold

17  some accounts to Ameristar Financial Servicing Company, LLC,

18  correct?

19  A.    Yes, sir.

10:27:06 20  Q.    How many times did Atlantic Financial sell accounts to

21  Ameristar Financial Servicing Company, LLC?

22  A.    Just this one time.

23  Q.    Okay.  And so all accounts that Atlantic Financial

24  Services sold to Ameristar Financial Servicing Company

10:27:24 25  occurred during one transaction, right?

1    A.    Yes, sir.

2    Q.    Okay.  And is that transaction reflected in Exhibit 4?

3    A.    Yes, sir.

4    Q.    Okay.  Were you personally involved in negotiations of

10:27:35  5    that transaction?

6    A.    Yes, sir.

7    Q.    Okay.  And is that your signature that appears on Page

8    11 of Exhibit 4?

9    A.    Yes, it is.

10:27:46  10    Q.    Okay.  And you signed that document as the managing

11    director/secretary of Atlantic Financial Services, Inc.,

12    correct?

13    A.    Yes, sir.

14    Q.    Has Atlantic Financial Servicing, Inc. ever sold

10:28:02  15    anything to Ameristar Financial Company?

16    A.    No, sir.

17    Q.    Okay.  Has Atlantic Financial Services, Inc. ever done

18    business with Ameristar Financial Company as opposed to

19    Ameristar Financial Servicing Company?

10:28:19  20    A.    No.  We've just done this one transaction.

21    Q.    Okay.  The contracts that were sold or the rights that

22    were sold, if any, do you know what those were?

23    A.    Do I know every single one of them?

24    Q.    Have you reviewed them?

10:28:39  25    A.    Yes.  Well, yes, and I've certainly reviewed this,

1     this account here, yes.

2     Q.     And when you were involved in this negotiation of this

3     transaction, did you have a chance to review and determine

4     if Mr. Jordan's contract was part of the negotiations?

10:29:00  5               MR. REICHENBACH:  Objection, Your Honor.  This

6     goes to two different issues.

7                One is that he's attempting to testify to the

8     content of a document again.

9                The other issue is this account schedule that

10:29:13 10    was allegedly attached to Exhibit 4 was withheld in

11    discovery.  It's never been produced.  We've never had a

12    chance to test the authenticity of that account schedule.

13               THE COURT:  Well, let me hear your response.

14               MR. GENTRY:  Your Honor, thank you.

10:29:30 15              The burden is not on the defendant to prove

16    that the universe of documents or the universe of accounts

17    was transferred.

18               The defendant doesn't have the burden of proof

19    on any of the issues that have been presented to the Court

10:29:47 20   today.

21               With this testimony we're trying to fill in

22    the gap because plaintiff's introduction of evidence was

23    only for the bills of sale without testimony, without

24    testimony of anything relating to them.

10:30:02 25              We're trying to provide some testimony of

1    foundation of what that transaction was that plaintiff was

2    relying on.  And the intent of this testimony is to not

3    prove that Mr. Jordan's contract was transferred anywhere,

4    but to provide a foundation for the document that's been

10:30:21  5    marked Joint Exhibit 4.

6              We're not here today to prove that he owes us

7    money.  We're here today to explain the transaction that's

8    in Exhibit 4.

9              THE COURT:  Well, counsel, the allegation is

10:30:43 10    that the statute was violated by a company attempting to

11    collect on a debt which it did not own, and I know you

12    indicated that the burden is plaintiff's initially to

13    establish or at least the burden is the plaintiff's and, as

14    you've argued, only the plaintiff's to establish that there

10:31:11 15    was a violation of the Act, and I agree with that, but we're

16    now in your case after the defendant has put on at least

17    some evidence that the account which was the basis for the

18    suit was -- represented a debt collection action by your

19    client where you had no authority to collect the debt.

10:31:46 20              And if I understand, at least from your

21    opening statement, the -- and your briefing on summary

22    judgment, and so and perhaps you've changed your theory on

23    that, that the -- that your intent is or your theory is that

24    the filing of a suit was based on the actual -- your having

10:32:23 25    an actual right to file suit; that the account was

1    transferred to your client, in fact.

2                    And unless you're proffering some different

3    theory by way of Mr. Bowman's testimony, Exhibit 1, based on

4    what your -- or at least what I understand your last

10:32:53 5    question to be, you're offering this or suggesting that this

6    was a part of the accounts that were transferred to your

7    client.

8                    Is that accurate?

9                    MR. GENTRY:  Yes.  Yes, Your Honor.

10:33:06 10                    THE COURT:  Well, Exhibit 4 includes Exhibit

11   1.

12                    MR. GENTRY:  Your Honor, I guess I haven't

13   solicited testimony on whether Exhibit 1 was an exhibit of

14   Exhibit 4.

10:33:21 15                    I'm trying to lay a foundation for his

16   testimony that accounts were transferred, and I'm -- and I'd

17   like to do it really on his personal recollection more so

18   than proving the universe of documents that were

19   transferred.

10:33:42 20                    THE COURT:  Oh, I understand that.

21                    As it relates to his recollection of

22   what -- and let's make sure we have the precise question.

23                    Can you recall what the specific question is

24   or you want me to go back and --

10:34:00 25                    MR. GENTRY:  I cannot, Your Honor.

1          THE COURT:  Sue, can you get us back to the

2     question that was objected to?

3          (Record read)

4          THE COURT:  And your objection was based on?

10:34:35  5          MR. REICHENBACH:  Rule of Evidence 1002.

6     There purportedly is a document that answers that question,

7     and it was purportedly Exhibit A to Joint Exhibit 4.

8          But Exhibit A is not here, it was not

9     disclosed in discovery, and oral testimony as to the content

10:34:53 10     of that Exhibit A is prohibited by Rule 1002.

11          MR. GENTRY:  Your Honor, I was not asking

12     about the contents of the document.

13          I'm trying to ask him from his personal

14     recollection if he recalls this account being part of the

10:35:07 15     transaction.

16          THE COURT:  All right.  And I will overrule

17     the objection with the understanding that that's all that

18     you're asking at this point is his independent recollection.

19          And we'll deal with the argument as to the

10:35:25 20     weight, if any, I should give to that based on if there's

21     other evidence.

22          You may answer.

23     A.    Okay.  Now, I want to make sure I answer correct.

24          Yeah, I know that this was one of the

10:35:39 25     contracts that got transferred to Ameristar Financial

1    Servicing Company.

2    Q.    Okay.  And do you know that from your personal

3    involvement?

4    A.    Yes.  Well, yes.  I knew this was one of the contracts

10:35:51  5    because the day of the contract, I went in this past week to

6    verify that, I went into our records to make sure that this

7    was, indeed, one of them that was transferred in this

8    transaction, and, yes, we do have record that it was part of

9    that transaction.

10:36:06  10    MR. REICHENBACH:  For the record I have the

11    same objection if he's talking about records that are not

12    before us.

13    THE COURT:  Well, clearly his testimony is

14    based on a recent review of records, and so it's not his

10:36:24  15    recollection is based on records that at least counsel is

16    arguing were never provided.

17    MR. GENTRY:  Your Honor, I'm not asking him

18    about the contents of other documents.  I'm going to leave

19    that alone.

10:36:41  20    I guess the testimony is what it is.

21    THE COURT:  Well, I just want to make it

22    clear, when you say you're not talking about the evidence of

23    other documents, what his testimony purports to be is that

24    this particular or Mr. Jordan's particular transaction was a

10:37:03  25    part of that, and the objection, as I understand it, is that

1    his testimony is based on a review of documents that are not

2    in the record.

3              MR. GENTRY:  Understood, Your Honor.  I'll

4    maybe approach it differently, Your Honor.

10:37:22  5              THE COURT:  All right.

6    BY MR. GENTRY:

7    Q.    Mr. Bowman, the yellow sheet that's in front of you

8    that you have, is that the paper, the actual piece of paper

9    that Atlantic Financial obtained when it acquired the

10:37:41 10   account from Pro Car?

11   A.    You mean the yellow one, is the yellow one the piece?

12   Q.    Yeah.

13   A.    Yeah, this is -- this is -- this is what we have.

14   Q.    Okay.

10:37:52 15   A.    I mean, there was an original.  Is that what you're

16   asking?

17   Q.    Well, I'm asking --

18   A.    Oh.

19   Q.    -- if that yellow piece of paper, which is Joint

10:38:01 20   Exhibit 1 in its nonphotocopied form, is that the document

21   that Atlantic acquired when it acquired the account?

22   A.    Yes.

23   Q.    And was that yellow piece of paper actually

24   transferred to Ameristar Financial Servicing Company, LLC?

10:38:28 25   A.    Yes.

1    Q.    And so Pro Car no longer has that or, I'm sorry,

2    Atlantic or Tebo no longer have that yellow piece of paper

3    as a part of its business records, correct?

4    A.    Correct.

10:38:59  5              MR. GENTRY:  If I may approach, Your Honor.

6              THE COURT:  Yes.

7              MR. GENTRY:  I have one more document with

8    this witness.

9              THE COURT:  You may.

10:39:15 10  BY MR. GENTRY:

11   Q.    Mr. Bowman, I've handed you what's been marked Joint

12   Exhibit 2.

13              Do you recognize that document?

14   A.    Yes.

10:39:25 15  Q.    Is that your signature that appears on that document?

16   A.    Yes.

17   Q.    And do you see the words "Atlantic Financial Services,

18   LLC" in the first sentence of that document?

19   A.    Yes.

10:39:47 20  Q.    And do you see after that in the same sentence the

21   words "Ameristar Financial Company, LLC."

22   A.    Yes, sir.

23   Q.    Okay.  And has Atlantic Financial Services, Inc. ever

24   transferred any accounts that it owns to Atlantic Financial

10:40:13 25  Services, LLC?

1      A.     No.  There is no LLC.

2      Q.     And so --

3                    THE COURT:  When you say -- I'm sorry.

4              When you say there is no LLC, you're talking

10:40:28  5    about Atlantic Financial Services, LLC?

6                    THE WITNESS:  Correct.  There's never been

7      Atlantic Financial Services, LLC.

8      BY MR. GENTRY:

9      Q.     This document, this Joint Exhibit 2, did you sign it

10:40:47 10    as part of the transaction that was intended to transfer

11     documents from -- or transfer rights under contracts from

12     Atlantic Financial Services, Inc. to Ameristar Financial

13     Servicing Company?

14     A.     Yes, sir.

10:41:03 15    Q.     Can you explain why those names in this Joint Exhibit

16     2 differ from the names in Joint Exhibit 4?

17     A.     Just -- just a bona fide or human error in typing it.

18     Q.     Why did you sign a bill of sale?

19     A.     It's just -- it's just the summation or receipt of the

10:41:35 20    fact that a purchase or transaction did occur.  Just kind of

21     gives -- kind of sums it up.

22     Q.     Has Atlantic Financial Services, Inc. attempted to

23     assert its rights under the John Jordan contract, the

24     Exhibit 1, since December 17th -- or December 19th, of 2007?

10:42:11 25    A.     No, sir.

1    Q.   And why is that?

2    A.   We sold it to Atlantic Financial Servicing Company.

3    We sold all the rights when we sold it.

4    Q.   When you say "we," who is "we"?

10:42:24 5    A.   Atlantic Financial Services, Inc.

6    Q.   Sold rights to who?

7    A.   To Ameristar Financial Servicing Company.

8    Q.   And is that sale, was that sale memorialized in the

9    Joint Exhibit 4?

10:42:42 10    A.   Yes, sir.

11              MR. GENTRY:  No further questions at this

12    time, Your Honor.

13              THE COURT:  Thank you.

14              MR. GENTRY:  Thank you.

10:43:03 15              MR. REICHENBACH:  Thank you, Judge.

16         CROSS-EXAMINATION OF ROBERT BOWMAN

17    BY MR. REICHENBACH:

18    Q.   Mr. Bowman, there's no assignment showing a sale of

19    accounts to Ameristar Financial Servicing Company, is there?

10:43:25 20    A.   I mean, it would be in the purchase agreement.

21    Q.   You're talking about Exhibit 4?

22    A.   Yes.

23    Q.   Is there any reason for you to think that Exhibit 4 is

24    an assignment?

10:43:35 25    A.   Well, it's a purchase and sale agreement.

1       I understand what you're saying, yeah, that's

2   the agreement on the bill of sale.  It looks like it was a

3   misprint or they didn't put the word "Servicing."

4   Q.    So you would agree with me there's no assignment that

10:43:53 5   shows a sale of accounts to Ameristar Financial Servicing

6   Company?

7           MR. GENTRY:  Objection, Your Honor, as to the

8   use of the word "Assignment."

9           The documents speak for themselves.

10:44:04 10           MR. REICHENBACH:  I can rephrase the question,

11   Your Honor.

12           THE COURT:  Thank you.

13   BY MR. REICHENBACH:

14   Q.    Mr. Bowman, is there any document labeled assignment

10:44:10 15   that states that it's transferred accounts to Ameristar

16   Financial Servicing Company?

17   A.    Well, I just have to read through the purchase

18   agreement real quick, but if you're asking me if the bill of

19   sale and assignment has a different name on it, it has

10:44:28 20   Ameristar Financial Company, is that the question?

21   Q.    Well, I'll get to that but --

22   A.    Okay.  Here, I don't have my glasses.  It looks to me

23   like 11.5 in the purchase and sale agreement, it says "With

24   respect to the portfolio, buyer and any subsequent owner

10:45:26 25   thereof shall have the right at any time thereafter the

1    closing date to assign the rights under this agreement."

2              I mean, that's under "assignment" there.

3    Q.    Is there any other part of the document that you

4    believe is an assignment?

10:45:43 5    A.    Assignment of the rights?  Yeah.

6              MR. GENTRY:  Object to finding the words in

7    the document.  The document speaks for itself.

8              THE COURT:  Well, he may answer.

9    A.    Okay.  Yeah, this is assignment.

10:45:57 10              And then I understand what you're saying, we

11    have a bill of sale and assignment, also.

12              Is that your question?

13    Q.    I'll get to that.

14    A.    Yeah.

10:46:03 15    Q.    First I want to get to --

16              THE COURT:  We're just talking about Joint

17    Exhibit 4 at this point.

18    BY MR. REICHENBACH:

19    Q.    Right.  So am I correct that you believe the only

10:46:11 20    thing in Joint Exhibit 4 that could constitute an assignment

21    is this Paragraph 11.5?

22    A.    Well, the assignment, and the fact that we are selling

23    the contracts to them and they're purchasing the contracts.

24    Q.    But there's nothing else in this document, Joint

10:46:25 25    Exhibit 4, right?

```
 1   A.    No.   Other than the assignment, no.

 2   Q.    And that 11.5 says that Atlantic would have the right

 3   to sell and assign the accounts, correct?

 4   A.    Talks about the buyer who I think would be --

 5   Q.    Oh, I'm sorry, you're right.

 6   A.    The buyer would be Ameristar Financial Servicing

 7   Company.

 8   Q.    So 11.5 doesn't even talk about Atlantic assigning the

 9   accounts, correct?

10   A.    Correct.

11   Q.    So does that help you answer the question which I

12   don't think you've answered yet, would you agree that

13   there's no assignment that on its face shows the sale of

14   accounts to Ameristar Financial Servicing Company?

15             MR. GENTRY:   Your Honor, I would object.

16   That's essentially a legal conclusion.

17             THE COURT:   Sustained.

18             Are you talking about -- well, sustained based

19   on the question.

20             MR. REICHENBACH:   Thank you, Judge.

21             I'll move on.

22   BY MR. REICHENBACH:

23   Q.    How many accounts, approximately, were sold in this

24   group that you say were sold to a company called

25   Ameristar --
```

1   A.   I'd say approximately a thousand.

2   Q.   And do you know approximately the value of the

3   accounts?  And let me narrow that.

4           The purported face value of the accounts.

10:47:51 5           MR. GENTRY:  Objection, Your Honor.  This is

6   irrelevant and not probative to the issues on the

7   plaintiff's claim.

8           MR. REICHENBACH:  I believe it's relevant

9   because if they're worth a whole bunch of money, it makes it

10:48:03 10   more likely that someone would not make a typo as to the

11   name of the party involved.

12           THE COURT:  Well, he said there were a

13   thousand accounts.

14           MR. REICHENBACH:  I can ask a different

10:48:14 15   question, Your Honor.

16           THE COURT:  Thank you.  Sustained.

17   BY MR. REICHENBACH:

18   Q.   Do you know roughly an average account value?

19           MR. GENTRY:  Same objection, Your Honor.  This

10:48:24 20   has no probative value to prove plaintiff's claims.

21           THE COURT:  I am not sure it does either, but

22   I'll allow an answer.

23           What it's worth is another question.

24   A.   Is the question worth or the balance?  The balance?

10:48:41 25   Q.   The average purported balance owed on each account,

1    just a ballpark.

2    A.    Okay.  They gave an approximation of 6,000.

3    Q.    Mr. Bowman, you don't know anything about the

4    corporate structure of Ameristar Financial Servicing, LLC,

10:48:58  5    do you?

6    A.    No, sir.

7    Q.    And you don't know anything about the corporate

8    structure of Ameristar Financial Company, LLC, do you?

9    A.    No, sir.

10:49:09 10              MR. REICHENBACH:  I don't have any other

11    questions.

12              Thank you.

13              MR. GENTRY:  Your Honor, if I might redirect

14    on one point Mr. Bowman.

10:49:17 15              THE COURT:  Sure.  You may.

16          REDIRECT EXAMINATION OF ROBERT BOWMAN

17    BY MR. GENTRY:

18    Q.    Mr. Bowman, if you could look at Joint Exhibit 4, I

19    ask this question because it was asked of you earlier.

10:49:52 20              I believe plaintiff's counsel asked you if the

21    words "assign" or "assignment" were in there.

22              I'd like to direct your attention to 2.1.  I

23    don't want to use this evidence to prove the document in

24    court other than to assist the party or the witness on the

10:50:08 25    stand.

1    If you could familiarize yourself with

2    Paragraph 2.1, please.

3    A.    Yes.

4    Q.    Is that the clause you intended to assign and transfer

10:50:23  5    to Ameristar Financial Servicing Company?

6    A.    Yes, sir.

7                MR. GENTRY:  No further questions.

8                Thank you.

9                THE COURT:  Thank you.

10:50:34  10                MR. REICHENBACH:  No redirect, Your Honor, or

11    recross.

12                THE COURT:  Thank you.  You may step down,

13    sir.

14                (Witness excused).

10:51:15  15                MR. GENTRY:  Your Honor, at this time we would

16    move for the admissions of Joint Exhibits 4 -- 1 through 8.

17                MR. REICHENBACH:  No objection, Your Honor.

18                MR. GENTRY:  I believe --

19                THE COURT:  1 through 8 will be admitted.

10:51:36  20                MR. GENTRY:  And, Your Honor, at this time the

21    defense would renew its request for a continuance to proffer

22    additional evidence before we rest.

23                THE COURT:  Let me ask you this, counsel, is

24    the examination of Mr. Jordan based on this newly discovered

10:52:04  25    evidence, or are there other -- can you segregate the

1    examination of Mr. Jordan to exclude this new evidence, or

2    not?

3                    MR. GENTRY:  No, Your Honor, I don't believe

4    we can on the points that -- he's already testified as to a

10:52:25  5    number of points today that we would not revisit in our

6    case.

7                    The only points I believe we would have left

8    for Mr. Jordan would be the evidence that simply cannot be

9    presented at this juncture.

10:52:36  10                    The one point, omission I made is the

11    Mansfield Municipal Court traffic citation that was shown to

12    Mr. Jordan and which bears the seal of the Mansfield

13    Municipal Court, we would move for that document's admission

14    as well.

10:53:02  15                    MR. REICHENBACH:  Well, I guess for what it's

16    worth I'll object because that was not disclosed in

17    discovery and it was purportedly sitting there since 2006.

18                    He's already testified about it.

19                    THE COURT:  You are objecting, counsel?

10:53:19  20                    MR. REICHENBACH:  To the introduction of the

21    document.

22                    THE COURT:  All right.  Given the -- when was

23    this purported ticket?

24                    MR. GENTRY:  September, 2006, Your Honor.

10:53:57  25                    THE COURT:  And you're not -- you're not

1    suggesting that this evidence was presented to

2    defendant -- or to plaintiff during discovery.

3              You're identifying this as something that you

4    just discovered that you now want to admit.

10:54:16   5              MR. GENTRY:  Correct, Your Honor.  We did not

6    have that document during the discovery period.

7              In that light, Your Honor, we would maintain

8    that plaintiff would suffer no prejudice; that this is a

9    matter of record in another Court and it's not something

10:54:42  10    that the contents of which could be disputed in discovery.

11             It bears the seal of the Court, the raised

12    seal, with the ink certification of the Municipal Court

13    Clerk of Court's.

14             THE COURT:  Mr. Reichenbach, this is a public

10:55:06  15    document so I assume you've made the arguments you intend to

16    make with respect to the Court's ruling?

17             MR. REICHENBACH:  Yes, Your Honor.

18             THE COURT:  All right.  I'll allow the

19    exhibit.

10:55:21  20             And so, all right, we're at the point of this

21    new evidence.

22             Am I correct, counsel, that you were not in a

23    position -- as relates to the issue of prejudice to the

24    defendant, the Court can't evaluate it other than based on

10:56:09  25    the representation that it is evidence you intend to

1    introduce against him.

2                    I take it counsel for the plaintiff doesn't

3    know what the evidence is so they're not in a position to

4    argue to the Court the prejudicial nature of it other than

10:56:30  5    from the standpoint of timing.

6                    And the Court can't evaluate the merits of the

7    fact that this is -- this is evidence that could not have

8    otherwise been discovered at an earlier point in time.

9                    So we're left solely with the issue of is

10:56:49 10    there -- should you be allowed to admit evidence that was

11    discovered and could not have been, I assume is the other

12    part of your argument, could not have been discovered prior

13    to last week when it was, in fact, discovered?

14                    MR. GENTRY:  We're not saying it could not

10:57:08 15    have been.

16                    We did not know about it, Your Honor, and it

17    was not anticipated.

18                    It's been -- it has been in existence.  We're

19    not saying it's newly in existence.  We simply just did not

10:57:21 20    know about it until last week.

21                    And, Your Honor, if I might offer as a

22    possible solution to this, we would ask for relief to be

23    able to present evidence through different counsel because I

24    simply cannot on the -- by filing with the Court what the

10:57:40 25    evidence is, and then asking the Court for that evidence to

1    be permitted and to be permitted to examine Mr. Jordan about

2    it.  And it can be proffered to the Court in that fashion,

3    we believe.

4            Your Honor, Mr. Cheek is an attorney and here

10:58:11  5    as a representative of Cheek Law Office.  I think he would

6    like the opportunity to present it and to examine Mr. Jordan

7    on it if the Court would allow him to do that.

8            MR. REICHENBACH:  Well, Your Honor, I guess my

9    response is focused on the surprise nature of the evidence

10:58:34 10   and they've admittedly -- it's not been -- there's no

11   allegation it's been concealed, and as I said before I have

12   discovered personally other information that we could have

13   used, but I think that the Court's trial order and case law

14   and, generally speaking, the rules of discovery don't allow

10:58:58 15   it.

16           THE COURT:  Well, I think that's generally the

17   case.

18           And I don't want to belabor this.  I will

19   allow you to proffer with whatever arguments you -- legal

10:59:15 20   arguments you wish to make as to why the Court should allow

21   it at this late juncture, as to why it's not prejudicial,

22   unduly prejudicial to do so, and I will consider it on that

23   basis.

24           And if I am inclined to permit it, then you'll

10:59:41 25   get other counsel to present it and to examine the witness

1    relative to it.

2                   But I'll give you both a chance to make that

3    showing.  So you'll have until tomorrow to submit your

4    written argument relative to why it should be admitted.

11:00:15  5    I'll give counsel an opportunity to respond, and we'll set a

6    date either to conclude with the closing arguments or

7    the -- and again I take it this is your last -- this would

8    be your last evidence in your case?

9                   MR. GENTRY:  Yes, Your Honor.

11:00:34 10                   THE COURT:  All right.  That's my ruling.

11                   So we'll proceed on that basis.  We'll suspend

12   testimony to allow you to address the issue.  And given my

13   schedule I'm not sure, I'll have to notify counsel obviously

14   of the next date that is available to finish the trial.

11:01:11 15                   I think your client wants to address you.

16                   MR. GENTRY:  Thank you, Your Honor.

17                   THE COURT:  All right.

18                   MR. REICHENBACH:  Would the Court entertain,

19   in the event that defendants are not allowed to introduce

11:01:25 20   this new evidence, would the Court entertain, if the defense

21   agrees anyway, written closings?  I know it's quite a drive

22   for, I guess, everybody involved.

23                   THE COURT:  I certainly would have no problem

24   with that.

11:01:42 25                   I know with lawyers they like to allocute, but

1    this is not -- I mean, there are complexities about this

2    case, but this is not a case where I think oral argument

3    will be that much more helpful than written submission based

4    on the state of the evidence at the conclusion of the case.

11:02:06  5              So, Mr. Gentry, how do you feel about that?

6              MR. GENTRY:  Your Honor, I think that's

7    appropriate and maybe in the form of, based on the evidence

8    that was heard, proposed findings and conclusions based upon

9    the evidence instead of just an oral argument.

11:02:22  10              THE COURT:  Right.  All right.

11              So --

12              MR. GENTRY:  Your Honor, I'm sorry, before we

13   break, can I have a two-minute recess with my client to --

14              THE COURT:  Sure.  Take your time now.

11:02:35  15              MR. GENTRY:  Thank you.

16              (Pause).

17              MR. GENTRY:  Thank you, Your Honor.

18              THE COURT:  No problem.

19              All right.  Is there anything further that

11:05:00  20   either side wants to present to the Court before we proceed

21   as I've indicated?

22              MR. REICHENBACH:  No, Your Honor.

23              MR. GENTRY:  Not at this time, Your Honor.

24   Thank you.

11:05:07  25              THE COURT:  All right.  Thank you.

1            All right.  Gentlemen, we'll be in touch with

2    you once I receive your briefs on the issue.

3                    MR. REICHENBACH:  Thank you, Judge.

4                    MR. GENTRY:  Thank you, Your Honor.

11:05:26 5            THE COURT:  And just for the record, before we

6    go off, I think the way we ended up, the only exhibits were

7    1 through 8.  The only additional proffer was the ticket

8    which was disallowed.

9                    MR. REICHENBACH:  Well, we have the actual

11:05:43 10   stipulations themselves.

11                   THE COURT:  And the stipulations themselves,

12   right.

13            I thought there were some documents

14   that -- oh, that was the joint exhibit that -- okay.

11:05:52 15           MR. GENTRY:  Would Your Honor like that ticket

16   marked so that it's clear, the traffic citation?

17                   THE COURT:  Yes.

18                   MR. GENTRY:  We should mark that.

19                   THE COURT:  Was it marked?

11:06:01 20           MR. GENTRY:  I don't believe we marked it.

21                   THE COURT:  Okay.  Let's mark it as --

22                   MR. GENTRY:  Defendant's Exhibit 1?

23                   THE COURT:  -- your Defendant's Exhibit A just

24   so we're not confusing them.

11:06:21 25           All right.  We're adjourned.

1          Thank you.

2          MR. GENTRY:  Thank you, Your Honor.

3          MR. REICHENBACH:  Thank you.

4          (Proceedings concluded).

5                    - - - - -

1

2                         C E R T I F I C A T E

3                  I certify that the foregoing is a correct

4       transcript from the record of proceedings in the

5       above-entitled matter.

6

7

8

9       **/s/Susan Trischan**

10      /S/ Susan Trischan, Official Court Reporter

11      Certified Realtime Reporter

12

13      7-189 U.S. Court House

14      801 West Superior Avenue

15      Cleveland, Ohio 44113

16      (216) 357-7087

17

18

19

20

21

22

23

24

25

1                              **I N D E X**

2

3     **WITNESSES:**                                           **PAGE**

4        DIRECT EXAMINATION OF JOHN JORDAN                     14

5        BY MR. REICHENBACH

6        CROSS-EXAMINATION OF JOHN JORDAN                      15

7        BY MR. GENTRY

8        REDIRECT EXAMINATION OF JOHN JORDAN                   27

9        BY MR. REICHENBACH

10       DIRECT EXAMINATION OF ROBERT BOWMAN                   45

11       BY MR. GENTRY

12       CROSS-EXAMINATION OF ROBERT BOWMAN                    59

13       BY MR. REICHENBACH

14       REDIRECT EXAMINATION OF ROBERT BOWMAN                 64

15       BY MR. GENTRY

16

17                              * * * * *

18

19

20

21

22

23

24

25